**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

TYRUN L. JONES                                                                    PETITIONER
ADC #143301

v.                                        5:19cv00099-BRW-JJV

WENDY KELLEY, Director,
Arkansas Department of Correction                                      RESPONDENT

<u>**PROPOSED FINDINGS AND RECOMMENDATIONS**</u>

<u>**INSTRUCTIONS**</u>

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson.   Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.   If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.   The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.       Why the record made before the Magistrate Judge is inadequate.

2.       Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.       The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial

evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional

evidentiary hearing.   Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

## I.    INTRODUCTION

Petitioner Tyrun L. Jones, an inmate at the Delta Regional Unit of the Arkansas Department

of Correction ("ADC"), brings this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus.   (Doc.

No. 1.)   Mr. Jones was convicted by a jury in Pulaski County, Arkansas, of second-degree

murder.   (Doc. No. 8-2 at 91-93.)   He was sentenced to twenty-five years' imprisonment plus

fifteen years' imprisonment on a firearm enhancement, which was ordered to run consecutively

for an aggregate sentence of forty years' imprisonment.   (*Id.*)

Mr. Jones filed a direct appeal of his conviction to the Arkansas Court of Appeals, which

affirmed.   *Jones v. State*, 2017 Ark. App. 286, 524 S.W.3d 1.   The Court of Appeals recited the

evidence in the case as follows:

> On February 13, 2015, the State charged Jones with first-degree murder of Alex
> Booker.   The case proceeded to trial on May 3, 2016.   On the first day of trial,
> Brianna Jordan testified that she lived in an apartment with Anita Henderson and
> that she had a sexual relationship with both Jones and Booker.   She further
> testified that on December 24, 2014, she was at her apartment with Jones and
> Henderson and that Jones texted Booker on her phone to come to the apartment.
> She explained that Booker later came to the apartment, that Booker and Jones had
> a disagreement, and that Jones shot Booker with a gun.   Jordan could not recall
> how many times Jones fired the gun or where Booker had been shot.   She stated
> that immediately after Jones fired the gun, she, Booker, and Henderson fled the
> apartment.

On the second day of trial, Henderson testified that she saw Jones shoot Booker four times in his back with a gun in her apartment. She also testified that she and Booker fled the apartment after the shooting. On cross-examination, defense counsel asked Henderson whether, following Booker's death, she had spoken with Jones in prison while she was visiting her brother. Henderson denied it. Defense counsel then asked Henderson whether she had told Jones that Jordan killed Booker, and Henderson further denied speaking to Jones.

Following Henderson's testimony, defense counsel informed the court that it wanted to call Georgette Giles, who was not on the witness list and who had been present in the courtroom that day, to impeach Henderson's testimony. Defense counsel explained that Giles had discussed with him certain information that could be used for impeachment purposes "after the close of business yesterday" and that he did not notify the State about Giles's testimony because he believed Henderson would tell the truth on the stand. Defense counsel proffered Giles's testimony that about two months prior to the trial, while she was visiting Jones in prison, she heard Henderson tell Jones, "[L]et's put it all on [Jordan.]" Giles stated that she did not attend the first day of trial but that she was in the courtroom for the entirety of Henderson's testimony on the second day.

The State objected to Giles's testimony, asserting that it violated Arkansas Rule of Evidence 615 because the rule had been invoked and Giles had been in the courtroom during Henderson's testimony. The court found that

> the problem the Court sees in this case in addition to the inconsistencies in her testimony, is the fact that she reported this last night. That's before today. Defense counsel let this witness be called this morning and testify in this witness's presence to something he knew she was [going to] refute ... Defense counsel knew ... that this witness, this witness right here, that she was going to refute the testimony of Anita Henderson or might refute it depending on what Miss Henderson said. Yet you allowed the State to call that witness without bringing to the attention of the Court that a found contrary witness was in the Court Room ... the Court's striking the witness from the list.

Jones later testified on his own behalf. He stated that Jordan shot Booker in Henderson and Jordan's apartment and that Henderson was not present during the shooting. He explained that after he saw Jordan shoot Booker, he immediately fled the apartment. He admitted that he initially told police that a man named Quincy shot Booker.

The jury convicted Jones of second-degree murder and found that he had used a firearm in committing the felony. The case then proceeded to the sentencing phase, and the prosecutor stated the following during closing remarks:

> And you get to hear the emotional impact that [Henderson]'s out in the hall suicidal. And [Henderson] is a nice person. She's a good person. If she had ever been in trouble before, you would have heard it. She has. She's got emotional problems for seeing the violence that she has, that she had seen. And who started that? This man. So, [Henderson] had the same, the same opportunities as he did, yet he has people that he could go to for help. Who does [Henderson] have to go to for help, her psychiatrist.

The State further told the jury that

> [there are] two courts involved. There's the one court where you'll be judged at the end, but there's another court right here right now to take care of society.

The jury later sentenced Jones to 300 months' imprisonment for second-degree murder with a 180–month firearm enhancement.

*Id*. at 1-4, 524 S.W.3d at 2-3.[1]  Mr. Jones's petition for review of the decision was denied by the Arkansas Supreme Court. (Doc. No. 7-7.) Mr. Jones did not file a petition for post-conviction relief under Arkansas Rule of Criminal Procedure 37.

Mr. Jones filed his initial petition for writ of habeas corpus in case number 5:17CV00242-JLH. (Doc. No. 7-8.) He voluntarily dismissed that petition on two occasions in order to correct deficiencies. (Doc. Nos. 7-10, 7-11, 7-12, 7-15, 7-16.) Mr. Jones subsequently filed a state habeas corpus petition in Chicot County Circuit Court, seeking to exhaust his claims.[2]  (Doc. No. 7-17 at 4-5.) The petition was denied. (*Id*. at 12.) The Arkansas Supreme Court dismissed

---

[1] Mr. Jones's arguments on appeal were as follows: (1) the circuit court abused its discretion in finding Giles should be excluded as a witness under Rule 615; and (2) improper comments made during the State's closing argument were so prejudicial and inflammatory as to deprive him of a fair trial. (Doc. No. 7-2 at 8.)

[2] Mr. Jones's arguments in his state habeas petition were as follows: (1) newly discovered evidence showed "police failed to properly identify witness"; (2) his attorney had a conflict of interest; (3) he was "unlawfully detained"; (4) the trial judge had a conflict of interest; (5) police failed to investigate witnesses who could have exonerated him; and (6) there was no evidence proving he committed the murder. (Doc. No. 7-17 at 4-5.)

Mr. Jones's appeal, holding there was no basis for habeas relief because the claims did not implicate either the facial validity of the judgment or the jurisdiction of the trial court. *Jones v. State*, 2019 Ark. 12, 565 S.W.3d 100.

Mr. Jones filed the instant Petition for Writ of Habeas Corpus on March 20, 2019. (Doc. No. 1.) Reading the Petition and the accompanying Brief in Support (Doc. No. 6) together, Mr. Jones cites six grounds for relief: (1) newly discovered evidence; (2) illegal detention; (3) ineffective assistance of counsel; (4) actual innocence; (5) judicial conflict of interest; and (6) double jeopardy. (Doc. Nos. 1 at 5-7, 6 at 1-6.) Respondent contends Mr. Jones's claims are all either procedurally defaulted or meritless, or both. (Doc. No. 7 at 10-30.) After careful consideration of the Petition, Brief in Support, Response, and Reply (Doc. No. 9), I recommend the Petition be dismissed with prejudice.

## II.    ANALYSIS

### A.    Newly Discovered Evidence/Actual Innocence

Because Mr. Jones's first and fourth claims are interwoven, I will address them together. He contends he is actually innocent of the crime as proven by newly discovered evidence. Specifically, Mr. Jones submits notarized statements from two ADC inmates who claim to have been present at the time of the murder and deny that Mr. Jones was the person who shot Alex Booker. (Doc. No. 1 at 9-10.) Oliver Williams, also known as "Little O," says in his statement that Mr. Jones and Mr. Booker had a "small argument" and Mr. Jones told Mr. Booker to leave the apartment. (*Id*. at 9.) According to Mr. Williams, "I don't remember who shot Alex but I am sure that Tyrun did not shoot him." (*Id*.) Bralon Reed says in his statement that Mr. Jones and Mr. Booker had a "disagreement about something" and Mr. Booker started to pull a gun from his pocket. (*Id*. at 10.) Mr. Reed says he heard three gunshots at that point. (*Id*.) His statement

does not identify who shot Mr. Booker but says "Tyrun did not shoot Alex Booker."  (*Id.*)

Mr. Jones also says an individual by the name of Eric Horton was scheduled to give a statement to police about the murder but never showed up to provide a statement.  (Doc. No. 6 at 3-4.)  Mr. Jones does not provide any detail as to what Mr. Horton's statement would have been, but he says it would have "exonerated" him.  (*Id.*)  Additionally, Mr. Jones claims statements made to police by Anita Henderson and Brianna Jordan were coerced and his own statement was recorded without his knowledge.  (*Id.* at 4-5.)  He does not explain how this constitutes newly discovered evidence or supports his claim of actual innocence.

It is not clear whether Mr. Jones intends to raise a freestanding claim of actual innocence or a "gateway" claim excusing the procedural default of his other claims.  But it is well settled that a freestanding claim of actual innocence is not cognizable in habeas:  "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Burton v. Dormire*, 295 F.3d 839, 848 (8th Cir. 2002) ("[W]e have squarely rejected the notion that a prisoner may receive a writ simply because he claims he is innocent.").

On the other hand, "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief."  *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).  This rule, known as the fundamental miscarriage of justice exception, "is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons."  *Id.* (quoting *Herrera*, 506 U.S. at 404).  But the United States Supreme Court has characterized tenable actual-innocence gateway pleas as "rare."  *Id.* at 386.  A petitioner who raises a gateway

claim of actual innocence must establish (1) new and reliable evidence that was not presented at trial, and (2) in light of the new evidence, it is more likely than not that no reasonable juror would have convicted him.  *Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997).  Evidence is "new" if it was not available at the time of trial through the exercise of due diligence.  *Nooner v. Hobbs,* 689 F.3d 921, 934 (8th Cir. 2012).  Additionally, to establish a claim of actual innocence, the petitioner must show factual innocence, not simply legal insufficiency of the evidence to support a conviction.  *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001).

As set out below, some of Mr. Jones's habeas claims are procedurally defaulted.  To the extent he intends to raise a gateway claim of actual innocence to excuse his procedural default, that claim fails.  In short, the "newly discovered evidence" on which Mr. Jones relies is neither new nor reliable.  The accounts of Oliver Williams and Bralon Reed, which Mr. Jones claims exonerate him, were available at the time of trial.  Both claim to have been eyewitnesses to the shooting.  Mr. Jones does not dispute he was present as well (Doc. No. 1 at 13); thus, he would have been aware of the presence of Mr. Williams and Mr. Reed.  The same is true for Eric Horton, who Mr. Jones claims was also present.  (Doc. No. 6 at 3.)  Moreover, the statements of Mr. Williams and Mr. Reed confirm that Mr. Jones was present at the crime scene and had an argument with the victim prior to the shooting.  (Doc. No. 1 at 9-10.)  Improbably, both claim Mr. Jones was not the shooter but fail to identify anyone else as the shooter.  Their accounts are simply not credible.  In addition, although Mr. Williams and Mr. Reed gave excuses for their delay in coming forward, both statements were made years after the murder.  It is "reasonable to presume that there is something suspect about a defense witness who is not identified until after the 11th hour has passed."  *Herrera*, 506 U.S. at 418 (quoting *Taylor v. Illinois*, 484 U.S. 400, 414 (1988)).

In addition to being neither new nor reliable, the statements of Mr. Williams and Mr. Reed

conflict with other evidence presented at trial. Most importantly, Brianna Jordan and Anita Henderson both testified that Mr. Jones shot Mr. Booker following their argument. (Doc. No. 8-3 at 7, 85.) Mr. Jones's supposedly newly discovered evidence does not make it more likely than not that no reasonable juror would have convicted him.[3]

### B.    Unlawful Detention/*Brady* and Ineffective Assistance of Counsel

In his second claim for relief, Mr. Jones argues he is unlawfully detained because the investigating officer, Dane W. Pederson, erred in his investigation. He points to Detective Pederson's report of Brianna Jordan's interview, wherein Detective Pederson lists names of people Ms. Jordan said were present at the time of the shooting. (Doc. No. 1 at 12.) In his report, Detective Pederson identified "Little O" as Quincy Wilbon; as Mr. Jones explains, "Little O" is actually Oliver Williams. (*Id.* at 9.) The crux of Mr. Jones's argument appears to be that Detective Pederson failed to disclose the fact of this misidentification and thus withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. No. 6 at 3-5.)

In his third claim for relief, Mr. Jones contends his trial counsel provided ineffective assistance because he failed to contact Oliver Williams or obtain his testimony. (Doc. No. 1 at 5.) According to Mr. Jones, he made his trial counsel aware that Mr. Williams's testimony would be critical because it would exonerate him. (*Id.*) Mr. Jones makes another allegation of

---

[3] As Respondent points out, the evidence was more likely to have damaged Mr. Jones's credibility, as it indicated he was recruiting fellow inmates to lie on his behalf. The jury heard testimony from two other inmates who came forward after speaking with Mr. Jones in prison, claiming to have been present at the crime scene and denying Mr. Jones shot Mr. Booker. (Doc. No. 8-4 at 197-231, 232-255.) The jury also heard a recorded jail call in which Mr. Jones instructed Ms. Jordan to complete an affidavit saying she did not remember what happened (*Id.* at 166-67), as well as Mr. Jones's testimony admitting he tried to blame the murder on Quincy Wilbon after his death (Doc. No. 8-5 at 19).

ineffective assistance in his Reply:  that his trial counsel was ineffective for allowing witness Georgette Giles to remain in the courtroom during Anita Henderson's testimony, resulting in the exclusion of her testimony meant to impeach Ms. Henderson.   (Doc. No. 9 at 2-3.)

Respondent asserts both claims are procedurally defaulted.   Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts.  *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State")).   The fair-presentment requirement exists so that the respective state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Murphy*, 652 F.3d at 849 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Picard v. Connor,* 404 U.S. 270, 275 (1971) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) ("We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'"); *Lenza v. Wyrick*, 665 F.2d 804, 807-08 (8th Cir. 1981).   In order to fairly present a federal claim to the state courts, the petitioner must have referred to "'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts."  *Murphy*, 652 F.3d at 849.

When a state inmate fails to comply with the fair-presentment requirement, his or her claim will be procedurally defaulted.   *Id*.   A state inmate also procedurally defaults a claim by violating a state procedural rule that independently and adequately bars direct review of the claim by the United States Supreme Court.   *Id*.   If it would be futile for a petitioner to return to the

state courts to present his or her claim, "the exhaustion requirement in § 2254(b) is satisfied, but th[is] failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). When a state prisoner has defaulted his or her federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice," that is, a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Mr. Jones failed to present his *Brady* and ineffective assistance claims in state court. Neither claim was raised on direct appeal; he did not file a Rule 37 petition, and the time to do so has expired. *See* Ark. R. Crim. P. 37.2(c)(ii) (if an appeal was taken of the judgment of conviction, a Rule 37 petition must be filed within sixty days of the date the mandate is issued).[4] In his state habeas petition, Mr. Jones did list one claim as "Newly Discovered Evidence: Police failed to properly identify witness." (Doc. No. 7-17 at 4.) However, he provided no further detail and did not mention a purported *Brady* violation. In dismissing Mr. Jones's appeal from the denial of state habeas relief, the Arkansas Supreme Court construed this "conclusory" claim as one challenging the sufficiency of the evidence. *Jones*, 2019 Ark. 12, at 3, 565 S.W.3d at 102. Because Mr. Jones failed to comply with the fair-presentment requirement, his *Brady* and ineffective assistance claims are procedurally defaulted.

Mr. Jones does not argue he is entitled to the benefit of the cause and prejudice exception,

---

[4] The mandate in this case was issued on June 1, 2017. (Doc. No. 7-7.)

but he does mention, in his Brief in Support, that he was transferred between ADC units while he was working on a Rule 37 petition.  (Doc. No. 6 at 2.)  He says his new unit did not allow inmates to "physically go inside of the law library," permitting him only to request materials on paper.  (*Id.*)  Therefore, he needed more time to complete his Rule 37 petition, but the circuit court denied his motion for extension of time.  (*Id.*)  These facts do not qualify as cause. "'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him."  *Coleman*, 501 U.S. at 753 (emphasis in original).   The Eighth Circuit has held that lack of access to a law library does not constitute cause to excuse an untimely filing.  *Williams v. Norris*, 80 Fed. Appx. 535, 536 (8th Cir. 2003) (unpublished per curiam).

Moreover, the procedural default of Mr. Jones's ineffective assistance of counsel claim is not excused by *Martinez v. Ryan*, 566 U.S. 1 (2012).   The *Martinez* exception applies in limited circumstances:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances.   The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial.   The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id*. at 14.  The language of *Martinez* strongly implies, if not compels, that there must have actually been a collateral post-conviction proceeding in order for the exception to apply.   *Martinez* and its progeny discuss a defective collateral-review process; they do not discuss a non-existent one – a collateral review that did not happen because the convicted person simply failed to file it in a

timely fashion.  *See Jones v. Pa. Bd. of Prob. & Parole*, 492 Fed. Appx. 242, 246-47 (3d Cir. 2012) ("Because the Court spoke only of applying its exception to an 'initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel[,]' we conclude that the *Martinez* analysis is inapplicable where the criminal defendant did not initiate any state collateral review proceeding whatsoever.").  Because Mr. Jones did not file a Rule 37 petition at all, *Martinez* does not apply.

Finally, for the reasons previously stated, Mr. Jones has failed to make a credible showing of actual innocence that would entitle him to the benefit of the miscarriage of justice exception. Accordingly, the procedural default of his *Brady* and ineffective assistance of counsel claims is not excused.

Even if these claims were not procedurally defaulted, they fail on the merits.  Under *Brady*, the government is required to disclose any evidence that is both "favorable to an accused" and "material either to guilt or to punishment."  *United States v. Gonzales*, 90 F.3d 1363, 1368 (8th Cir. 1996) (quoting *Brady*, 373 U.S. at 87).  There are several limitations, notably including that the government "need not disclose evidence available to the defense from other sources or evidence already possessed by the defendants."  *Id*.  Here, Mr. Jones does not argue that Detective Pederson withheld any exculpatory information or evidence provided by "Little O"; he argues only that Detective Pederson withheld the fact that he had misidentified "Little O" in his written report, or simply misstated his name.  And Mr. Jones does not dispute that he knew the true identity of "Little O" and knew he was present at the crime scene.  Therefore, even if Detective Pederson's misstatement in his report could somehow be considered exculpatory, he was not required to disclose it to the defense.

Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a claim of ineffective assistance

of counsel has two components: (1) that counsel's performance was deficient, resulting in errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense, depriving the defendant of a fair trial.   As previously stated, Oliver Williams's testimony would have been cumulative to other evidence in that it would have placed Mr. Jones at the crime scene and confirmed he had an argument with the victim prior to the shooting.   On top of that, it would have been more harmful than helpful; Mr. Williams's statement was not credible and in fact indicated Mr. Jones recruited witnesses in prison to lie on his behalf.   Trial counsel's failure to call Mr. Williams to testify cannot be considered deficient performance or prejudicial.   *See, e.g.*, *Bucklew v. Luebbers*, 436 F.3d 1010, 1020 (8th Cir. 2006) (counsel not ineffective for failing to call witnesses whose testimony would have been cumulative and potentially harmful to the defense).   As for the exclusion of Georgette Giles's testimony, even assuming trial counsel erred in failing to ensure she was outside the courtroom, Mr. Jones cannot establish a reasonable probability that, but for this error, the result of the trial would have been different.   *Strickland*, 466 U.S. at 694.   Ms. Giles's impeachment of Anita Henderson would have had minimal effect since Ms. Henderson's testimony was consistent with other evidence, including the testimony of Brianna Jordan.

### C.    Judicial Conflict of Interest

Mr. Jones contends the trial judge held a "personal bias" in the case because he knew the victim's father, a lawyer.  (Doc. No. 1 at 6.)   He notes the judge saw the victim's father in chambers prior to trial, which the judge mentioned on the record when the prosecutor asked if the victim's parents could remain in the courtroom during trial.   (*Id*. at 11.)   Mr. Jones points specifically to the judge's statement that he had known the victim's father "for years" and the two came from the same "part of the country."   (*Id*.)   Mr. Jones says the trial judge's bias was also

revealed in his exclusion of Georgette Giles as a witness as well as his exclusion of Mr. Jones's brothers from the courtroom for part of the trial.   (Doc. No. 6 at 3.)

Respondent argues this claim is procedurally defaulted, as Mr. Jones did not raise it at trial or on direct appeal.[5]   He raised the claim in his state habeas petition, listing "conflict of interest" by the trial judge without providing additional detail.   (Doc. No. 7-17 at 4.)   In dismissing Mr. Jones's appeal from the denial of the petition, the Arkansas Supreme Court held the judicial conflict of interest claim "could have been raised at trial and settled there" and was not a ground for the writ because it did not implicate the facial validity of the judgment or the jurisdiction of the trial court.   *Jones v. State*, 2019 Ark. 12, at 3-4, 565 S.W.3d at 102.   Because the state court disposed of Mr. Jones's judicial conflict of interest claim on independent and adequate non-federal grounds, it is procedurally defaulted.

> For the federal court to enforce a state procedural bar, either the state court must have declined to reach the issue for procedural reasons or it is clear that the state court would hold the claim procedurally barred.   The default must have been actually imposed; it is not enough that the state court *could* or *should have* imposed a default.   The federal court looks to the last, reasoned state court opinion dealing with the claim to determine whether a specific contention is procedurally defaulted. "If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available."

*Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004) (emphasis in original) (internal citations omitted).   Mr. Jones does not argue entitlement to the cause and prejudice exception, except to say, as previously noted, he lacked sufficient time to file a Rule 37 petition.   As Respondent points out, a claim of judicial conflict of interest would not have been cognizable in Rule 37.   *See*

---

[5] Mr. Jones did challenge the exclusion of Ms. Giles's testimony on direct appeal, but not in the context of a judicial conflict of interest.   (Doc. No. 7-2 at 89-93.)

*Nelson v. State*, 2014 Ark. 28 (per curiam).   And, for the reasons stated above, Mr. Jones has not demonstrated entitlement to the miscarriage of justice exception.

Even if this claim were not procedurally defaulted, it is meritless.   Mr. Jones has not shown how the trial judge's mere acquaintance with the victim's father constituted a conflict of interest, and he has not drawn a connection between the alleged bias and any unfavorable rulings. Ms. Giles was excluded as a witness because she violated Arkansas Rule of Evidence 615; this ruling was affirmed on appeal.   *Jones v. State*, 2017 Ark. App. 286, at 5, 524 S.W.3d at 4.   Mr. Jones's brothers were accused of intimidating a prosecution witness during her testimony on the first day of trial, and the trial judge asked if it would be "agreeable" to them "to give us leave and not attend the trial for the remainder of the trial."   (Doc. No. 8-3 at 69.)   The brothers agreed. (*Id.*)   Even if this could be considered an unfavorable ruling, an unfavorable judicial ruling is "insufficient to require disqualification absent a showing of 'pervasive personal bias and prejudice.'"   *Holloway v. United States*, 960 F.2d 1348, 1351 (8th Cir. 1992) (quoting *Davis v. Commissioner*, 734 F.2d 1302, 1303 (8th Cir. 1984) (per curiam)).   In short, Mr. Jones has completely failed to show the trial judge was biased against him or that he was prejudiced as a result.

### D.    Double Jeopardy

Finally, Mr. Jones asserts he has been subjected to double jeopardy.   (Doc. No. 1 at 7.) He explains he was convicted of first-degree battery in 2008; he was sentenced to fifteen years' imprisonment and was released on parole after serving four years of that sentence.   (Doc. No. 6 at 6.)   After his second-degree murder conviction in this case, and his sentence to twenty-five years' imprisonment plus fifteen years on the firearm enhancement, the ADC "added a second enhancement to petitioner's sentence as Act 1805 requiring petitioner to serve 100% of both the

15

murder second degree and the gun enhancement." (*Id.*)  Mr. Jones argues that, because he already served his sentence for the first-degree battery, his conviction in this case "was obtained by a violation of the protection against double jeopardy." (*Id.*)

Mr. Jones is referring to Arkansas Code Annotated § 16-93-609(b), which provides that a person who commits "a violent felony offense" is not eligible for parole if he or she has previously been found guilty of or pleaded guilty or nolo contendere to a violent felony offense.  First-degree battery and second-degree murder are both considered violent felony offenses.  Ark. Code Ann. §§ 16-93-609(b)(2) & 5-4-501(d)(2)(A).  Accordingly, Mr. Jones is not eligible for parole on the second-degree murder conviction due to his previous conviction for first-degree battery.  His argument misapprehends both the terms of the statute and the concept of double jeopardy.  The fact that he is now ineligible for parole does not mean he was given multiple punishments for a single crime.  *See Spencer v. Texas*, 385 U.S. 554, 560 (1967) (statutes requiring recidivists to serve an enhanced sentence do not violate right to be free from double jeopardy).

Moreover, habeas corpus relief under 28 U.S.C. § 2254 is available "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the Untied States."  28 U.S.C. § 2254(a).  There can be no federal constitutional violation absent a federally protected liberty interest, and there is no protected liberty interest in the possibility of parole.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may create a federally protected liberty interest in the process of establishing a parole system, Arkansas has not done so.  *See Mason v. Hobbs*, 2015 Ark. 20, 453 S.W.3d 679; *Hamilton v. Brownlee*, 237 Fed. Appx. 114, at 115 (8th Cir. 2007) (unpublished per curiam) ("Arkansas parole statutes do not create a protectable liberty interest in discretionary parole decisions").  Therefore, Mr. Jones's claim is not cognizable in habeas.

### III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   In cases where the petitioner's claims are procedurally barred, a district court must consider the following factors when determining whether it should issue a certificate of appealability: "1) if the claim is clearly procedurally defaulted, the certificate should not be issued; 2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, 3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted."   *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (citing *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000)); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006).

Mr. Jones's claims are all either clearly procedurally defaulted or clearly meritless, for the reasons stated herein.   I find no issue on which he has made a substantial showing of the denial of a constitutional right.   Accordingly, no certificate of appealability should issue.

### IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.      Mr. Jones's § 2254 Petition for Writ of Habeas Corpus (Doc. No. 1) be DISMISSED with prejudice.

2.      A certificate of appealability not be issued.

DATED this 20th day of June 2019.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE